THE BARRETT MANUFACTURING COMPANY *vs.*
A. D'AMBROSIO ET AL.

First Judicial District, Hartford,. January Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The plaintiff .agreed with the defendants to sell them 20,000 gallons of dehydrated coal tar for the latter's use in fulfilling a highway contract; that such tar should comply with the specifications submitted by the State and embodied in the construction contract of the defendants; and that before shipping the tar the plaintiff would submit a sample of it to the highway commissioner and secure his approval of its grade and quality. *Held* that this last requirement constituted one of the essential elements of the agreement and that its fulfilment by the plaintiff was a condition precedent to the consummation of the contract; and that inasmuch as the plaintiff did not comply with this requirement, and the highway commissioner had refused to permit the defendants to use the tar upon the highway, they might properly refuse to accept and pay for it.

Barrett Mfg. Co. *v.* D'Ambrosio.

The plaintiff claimed that the defendants had waived the fulfilment of this requirement, and that by paying the freight and removing the tar from the railroad station, and by not objecting to it for two or three months, the defendants had thereby accepted the tar. The defendants, on the contrary, contended and offered evidence to prove that their conduct was induced by the false representations of the plaintiff's agent to the effect that a sample of the tar had already been submitted to and been approved by the highway commissioner, so that they had no occasion to examine the tar until it was needed for use on the road. *Held* that if this contention of the defendants was found to be true, they were not bound to accept and pay for the tar; and that the jury should have been so instructed.

The written memorandum of an agreement for the sale of personal property for $100 or more, must contain all the material terms of the contract, otherwise it does not answer the demands of the statute of frauds, Public Acts of 1907, Chapter 213, § 4.

Whether "part payment" has been made for merchandise sold, and whether there has been an "acceptance" of the goods, within the meaning of the statute of frauds, are questions for the jury under appropriate instructions from the court.

Argued January 6th—decided March 15th, 1916.

ACTION to recover the price of a quantity of coal tar furnished by the plaintiff to the defendants for use in road building, brought to the Superior Court in Hartford County and tried to the jury before *Tuttle, J.;* verdict and judgment for the plaintiff for $1,705, and appeal by the defendants. *Error and new trial ordered.*

The plaintiff offered evidence to prove the following facts: The State of Connecticut, through its highway commissioner, invited bids for building a section of highway in Windsor Locks, in accordance with certain specifications. The defendants' bid was accepted November 12th, 1912. The specifications among other things provided for use in building the highway, that "a specially prepared dehydrated coal tar shall be furnished from which all possible moisture has been removed and equal to sample submitted." The contract was executed in accordance with the bid.

The defendants ordered, through plaintiff's agent, Cowan, 20,000 gallons of dehydrated tar, to be satisfactory to the State highway commissioner and for use in this road, as plaintiff's agent knew. A new highway commissioner was chosen February 23d, 1913. On April 28th, 1913, plaintiff notified defendants that it would ship this tar between May 9th and 15th, and this it did. Samples of this tar were in the State highway commissioner's office at the time of the contract and up to the time the defendants took the tar from the railroad, paid the freight upon it, and distributed the barrels in which it had been sent along the line of road to be built. The tar so shipped and received by defendants complied with the specification and contract, and with the sample in the office of the commissioner. In August, 1913, the new commissioner examined this tar and refused to permit it to be used on the road because it was not of heavy enough material. Thereupon the defendants notified the plaintiff of the commissioner's decision, and subsequently ordered other material of the plaintiff for this road.

The defendants claimed to have proved that after their bid had been accepted and before the contract had been executed, the plaintiff's agent, Cowan, came to the defendants and offered to sell them tar as required under the specifications, and said that as defendants knew nothing of tar they should leave the matter to him. He also spoke of the probable change in the commissioner, and said that whoever he was the plaintiff's tar would suit him better than that of any one else, that the material would correspond with the specifications, and that the plaintiff would submit a sample of said tar, before shipment, to the commissioner, and secure his approval of the grade and quality of the material. In reliance thereon the defendants gave this order. The plaintiff did not submit a sample to the

commissioner before delivery, and neither the new commissioner nor his predecessor ever approved of this particular tar, although samples of the same kind of tar were in the office of the commissioner and had been approved by the old commissioner. Some time after the new commissioner had taken office, the defendants inquired of Cowan why he had not had this tar approved by the commissioner, and he replied that he had that approval and the tar was all right. Relying upon the statements of Cowan that the plaintiff would submit a sample to the commissioner, and that it had done so, and that the tar was satisfactory to the new commissioner, the defendants paid the freight, took the tar, and did not open the barrels and inspect them until they were ready to use them, when they were examined by the new commissioner and rejected.

*William M. Maltbie*, for the appellants (defendants).

*Nathaniel R. Bronson* and *Charles E. Hart, Jr.*, for the appellee (plaintiff).

WHEELER, J. The court charged the jury that the contract which the plaintiff undertook to perform was to furnish material of the kind and quality mentioned in the then specifications, to the satisfaction of the highway commissioner in office when the contract was made; and that if the material delivered was in accordance with the specifications, and was rejected because of the change in the contract and the substitution of a different material at a later time by the highway commissioner, the change would be no defense and the plaintiff would be entitled to recover.

This was erroneous. The contract, as admitted by the pleadings in these particulars, was: (1) that the tar should be satisfactory to the requirements of the high-

way commissioner; (2) that before shipment the plaintiff should submit a sample of the tar to the commissioner; and (3) secure his approval of the grade and quality of the sample submitted. The jury should have been instructed that this contract required the delivery of material of the kind and quality specified in the requirements of the commissioner at the date of the contract, but that, before shipment, the plaintiff was required to secure the approval of the highway commissioner of the grade and quality of the sample to be submitted. As a consequence, the submission of the sample must precede the delivery of the tar to, and its acceptance by, the defendants. In the absence of bad faith, this provision placed the approval of the grade and quality of the sample of tar to be submitted within the discretion of the commissioner.

The court further instructed the jury that if they found the tar as delivered was in all respects in accordance with the original specifications, and that it was not rejected for any defect in quality, the provision in regard to a sample was of no importance, since the plaintiff would have fulfilled its contract in all material respects, and any failure in detail which did not operate to the defendants' disadvantage or injury would be no defense.

This instruction ignored one of the essential elements of the contract. The parties had the privilege of making their own contract, with the sample provision in if they desired. The defendants had the right to rely upon the observance of this provision, and, until carried out, the right to refuse to accept the goods. If this were not so, the plaintiff might offer to deliver tar in conformity with the specifications, whose grade and quality the commissioner might not subsequently approve, with the result that the contractors would have on their hands tar which they could not use on the piece

of road for which they ordered it and for which the plaintiff knew they ordered it. It is, we think, a far more reasonable construction to hold that the vendor rather than the vendee took the risk of securing the commissioner's approval. The contract, as we construe it, makes the submission and approval of this provision a condition precedent to its consummation. It follows that the court was in error in instructing the jury that the only burden of proof upon the plaintiff was to prove, by a fair preponderance of the evidence, that the tar delivered to the defendants was of the kind and quality ordered by them. The court also erred in saying to the jury that the issues, reduced to their simplest terms, were: first, whether the tar delivered was of the kind and quality which the plaintiff agreed to deliver to the defendants; and secondly, whether it was rejected by the commissioner because of inferior quality or because of a change in the material he desired to use.

The defendants might have waived the breach of performance by the plaintiff and accepted the tar. The plaintiff claimed the tar had been accepted; the defendants that it had not. Acceptance, as defined by the Sales Act (Public Acts of 1907, Chap. 212, § 4) and as applied to the subject of this contract, was the delivery of the tar to the defendants and their conduct in relation to the tar inconsistent with the ownership of the plaintiff, or the retention of the tar without notice of rejection after a reasonable time. The plaintiff claimed an acceptance on both grounds. The defendants claimed to have proved that they had paid the freight on the tar and removed it from the railroad to the highway where it was intended to be used, induced by and relying upon the false representations of the plaintiff's agent that the plaintiff had submitted a sample of the tar to the commissioner and he had approved of the

same; and that in further reliance upon these false representations, the defendants had not submitted any sample to the commissioner; nor examined the tar until it had been opened within a reasonable time after its receipt and examined in the presence of the commissioner, who thereupon refused to approve of or permit the defendants to use it in the construction of the road, and the defendants then refused to accept the tar, of which the plaintiff had full knowledge. The defendants in substance requested the court to charge the jury that unless they were satisfied by a fair preponderance of the evidence from these facts that the words or conduct of the defendants expressed an intent on their part to become the owners of the tar, there would have been no acceptance within the meaning of the Sales Act. This request did not go as far as the defendants were entitled to have the jury instructed. The court should further have instructed the jury that if they found the facts in accordance with the defendants' defense and claims, the defendants were entitled, upon such examination of the tar, to refuse to accept it.

The defendants claimed, and requested the court to charge, that the plaintiff could not recover because there had been no compliance with the statute of frauds. The statute required, in this case: (1) an acceptance by defendants of a part of the tar sold, and an actual receipt of the same; or (2) part payment of the consideration by the defendants; or (3) a note or memorandum in writing of the sale signed by the defendants or their agent in that behalf. The defendants requested the court to charge: "In order to meet the requirements of the statute it is necessary that the 'note or memorandum in writing' should contain the terms of the sale." The plaintiff admitted in its reply that its agent agreed that it would submit a sample of the tar to be shipped to the commissioner, and would secure his approval as

to its grade and quality. This provision of the contract was a material one; it was omitted from the memorandum of the order given, and could not be known without the aid of parol proof. The request to charge should have been given. It accurately stated the law. The order given omitted a material term of the contract and was, as a consequence, unenforceable. *Shelinsky* v. *Foster*, 87 Conn. 90, 96, 87 Atl. 35; *Morris* v. *Peckham*, 51 Conn. 128, 133; *Nichols* v. *Johnson*, 10 Conn. 192, 198. The request, "Nor was there any part payment on account of this tar," should not have been given. This was a question of fact and not of law. Whether or not there was an acceptance was a question of fact, unless the jury found the facts as claimed by the defendants, in which case, as we have pointed out, there was no acceptance. The jury should have been instructed regarding the effect of part payment and acceptance in avoiding the bar of the statute of frauds. In view of these conclusions, we find no occasion to consider the other assignments of error.

There is error and a new trial is ordered.

In this opinion the other judges concurred.